JUL-31-97 THU

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

SPRINT SPECTRUM L.P.; DIAL      )
CALL INC., a wholly owned       )
subsidiary of NEXTEL            )
COMMUNICATIONS, INC.,           )
                                )
    Plaintiffs,                 )
                                )
vs.                             )    CIVIL ACTION No. CV-97-S-1424-S
                                )
JEFFERSON COUNTY, a body        )
politic, and the JEFFERSON      )
COUNTY COMMISSION,              )
                                )
    Defendants.                 )





**ENTERED**

JUL 31 1997

### MEMORANDUM OPINION

This action is before the court on plaintiffs' petition for declaratory judgment and writ of mandamus. They challenge a resolution adopted by the Jefferson County Commission on May 28, 1997, declaring a moratorium on "the processing of rezoning applications and processing of Board of Adjustment applications intended to authorize the installation of communication towers and [also] imposed upon the issuance of any building or development permit for such communication towers." Resolution No. May-28-1997-506. Plaintiffs contend the moratorium violates: Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7); the Omnibus Budget Reconciliation Act of 1993, 47 U.S.C. § 332(c)(3); Act No. 344 of the 1947 General Session of the Alabama Legislature; and, several state and federal constitutional provisions.

Upon consideration of the pleadings, briefs, affidavits, and stipulations, together with exhibits and oral arguments submitted during a hearing held July 25, 1997, this court makes findings of fact and enters conclusions of law.

*19*

# I. FINDINGS OF FACT

## A.   Plaintiffs

Sprint Spectrum L.P. is licensed by the Federal Communications Commission[1] to provide personal communication services ("PCS") to consumers residing in Jefferson County, Alabama and surrounding areas. Dial Call, Inc.—— a wholly owned subsidiary of Nextel Communications, Inc. (collectively, "Nextel")—— is licensed by the FCC to provide wide-area specialized mobile radio services ("SMR") in the same area.  Both companies base their services on digital technology, rather than analog data techniques employed by previous entrants to the relevant communications market.  Most authorities agree that digital technology is an advance in communication and information-processing services.[2]

PCS and wide-area SMR operate by transmitting low power radio signals between mobile, wireless units and fixed antennae mounted on towers, buildings, or other structures. Signals generated by mobile transmitters are fed to electronic devices housed in equipment cabinets at the base of antennae, where they are connected to telephone lines, over which the transmission is routed to ordinary telephone equipment located anywhere in the world.  A

---

[1] The Communications Act of 1934 created the Federal Communications Commission "for the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, nationwide, and worldwide wire and radio communications service with adequate facilities at reasonable charges." 47 U.S.C. § 151.

[2] See, e.g., Western PCS II Corp. v. Extraterritorial Zoning Authority of the City and County of Santa Fe, 957 F. Supp. 1230, 1238 (D. N.M. 1997).

single antenna and its related equipment cabinet are called a "cell site."

The distance over which the low-power signals emitted by mobile transmitters may be effectively broadcast to fixed, cell site antennae is limited to a relatively small geographic area, called a "cell." Accordingly, an overlapping, interconnected quilt of cells must be stitched together to provide seamless coverage. Where there is a "gap" in the pattern, the user's call is "dropped," or disconnected.

**B. Jefferson County's Regulation of Telecommunication Towers**

President Clinton signed the Telecommunications Act into law on February 8, 1996. It is intended to "accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition...." H.R. Cong. Rep. No. 458, 104th Cong., 2d Sess. 1 (1996).

Before the Act, Jefferson County did not have specific zoning regulations governing the construction, placement, or modification of cellular telecommunication towers. Even so, § 704 of the County's Zoning Ordinance authorized the construction of radio and television transmission towers on property zoned as utilities district one ("U-1"), and "the County allowed the placement of cellular [telecommunication] towers only upon property which was zoned U-1." Affidavit of Frank Humber, Director of Jefferson County's Land Development Department, at 1 (emphasis supplied).

3

When necessary to construct a cell site in an area other than one zoned U-1, in order to provide uninterrupted communication services, an application to rezone property had to be filed with the County Commission. That process was (and remains) protracted: "A rezoning of property to a district that permits towers requires at least 90 days, and often longer." *Id.*, at 2.

In all years preceding enactment of the Telecommunications Act, "the County had received only 16 applications to rezone property to U-1 for ... placement of a cellular telephone tower." *Id.*, at 1.[3] That changed on February 8, 1996. Applications to rezone property for construction of cell sites virtually tripled: 45 applications for new tower sites have been filed since the Act became law. *Id.*[4]

### C.   The First Moratorium

On December 12, 1995, two months prior to enactment of the Telecommunications Act, and perhaps in prescient anticipation of a marked increase in the number of rezoning applications if that legislation became law, "the Jefferson County Commission passed a resolution declaring a moratorium on the rezoning of property for cellular telephone towers." *Id.*, at 2; *see also* Plaintiffs' Exhibit B: Resolution Dec-12-1995-BESS-165.   Although not stated in the Resolution itself, the County's Land Development Director avers:

_____

[3] "The County Commission approved 12 of those rezonings with 2 denied and 2 withdrawn." Humber Affidavit, at 1.

[4] Of those, 40 have been approved, three have been denied, and two are pending. *Id.*

4

> [t]his moratorium was declared to give the Jefferson
> County Commission time to develop specific review
> procedures and guidelines regarding the placement,
> construction and modification of cellular telephone
> towers in the County. <u>The County Commission also wanted
> to explore ways to reduce the need for additional towers
> by encouraging telephone providers to share cell sites or
> "co-locate" on existing towers.</u>  The County Commission
> also wanted to explore ways to reduce the negative impact
> of towers on surrounding land uses, particularly
> residential neighborhoods.

Humber Affidavit, at 2 (emphasis supplied).

## D.   The New Zoning Guidelines

Three months later, on March 6, 1996, the Commission amended its zoning regulations. The new regulations[5] and "review guidelines for communication towers"[6] reflect the requirements of the Telecommunications Act.[7] They permit cellular telecommunication towers to be constructed in several additional zoning districts, and subject applications to the scrutiny of "a site review

---

[5] Sections 600-611, 701-704, 708, 800, 802, 900, and 905.

[6] Section 1118.

[7] Kenna B. Newman, the "primary drafter" of Section 1118 ("Review Guidelines for Communication Towers"), described the process resulting in the present guidelines as follows:

> Representatives of each carrier in the Birmingham marketplace,
> representatives from surrounding municipalities and the Birmingham
> Regional Planning commission, Jefferson County staff and the
> Regulation Committee of the Planning and Zoning Commission were
> involved in the drafting of the Guidelines. Research activities
> included: gathering ordinances both locally and nationally,
> incorporation of telecommunication research from the American
> Planning Association, educational presentations given by radio
> frequency engineers, structural engineers (which included oral,
> written and video presentations), securing all available information
> pertaining to the health, safety and welfare of telecommunication
> towers and finally, analysis of the 1996 Telecommunications Act.
> The results of this research were incorporated in the Guidelines and
> were also used to draft an illustrated, condensed summary of major
> issues for use by the Jefferson County Commissioners.

committee" only if a tower will be erected within 1,000 feet of a
residence.

> For example, under the Guidelines it is possible to place
> a cellular telephone tower on property zoned C-1, C-3 and
> C-5 Commercial or all Industrial districts and located
> <u>immediately contiguous</u> to residentially zoned property
> with no input from the Planning and Zoning Commission,
> the County Commission or the residents of the
> neighborhood (if the tower is within 1000 feet of a
> residence, review by a site review committee is required
> but only for landscaping and not for relocation of the
> tower). ...

*Id.*, at 3 (emphasis in original). Those amendments "significantly
reduced the length of time required to gain approval for the place-
ment of a new tower since a formal rezoning of property would
usually be unnecessary." *Id.*, at 2.

It is important to note, however, that when adopting the
"review guidelines" the Commission clearly stated an intent to
"discourage" the construction of new towers:

> It is the Commission's express intent that the construct-
> ion of new towers be an option of last resort; to the
> extent feasible, location of antennae on existing towers,
> building rooftops, and other suitable structures should
> first be sought. These guidelines are designed to ensure
> the compatibility of towers with and avoid adverse
> impacts to nearby properties and discourage the
> proliferation of towers throughout the County.

Plaintiffs' Exhibit B: "Section 1118 Review Guidelines for
Communication Towers," at ¶ A (statement of "Purpose").

**E. The Second Moratorium**

The first moratorium was lifted following adoption of guide-
lines. During the succeeding eight months, from March 6 through
November 19, 1996, the Land Development Department received 22
applications for placement of cellular telecommunication towers.

6

Humber Affidavit, at 2.[8]  Evidently, most of those were for new towers, as opposed to applications to locate "antennae on existing towers, building rooftops, and other suitable structures" because, on November 19, 1996,

> the Jefferson County Commission adopted a resolution establishing a second 90 day moratorium only on the processing of applications for rezoning of property for placement of cellular telephone towers.  The second moratorium did not restrict the processing of applications for towers that met the guideline criteria and did not require rezoning.  That is, the second moratorium only applied to applications to rezone property for the purpose of erecting a cellular telephone tower.

*Id.* (emphasis in original).

**F.    The Third Moratorium**

The second moratorium lapsed on February 7, 1997.  Subsequent applications continued the previous pattern, however: "It was clear that [cellular] providers were going to continue applying for individual tower sites instead of voluntarily co-locating on existing towers."  *Id.*, at 3.

It also is clear that residents of county neighborhoods contiguous to commercial, industrial, or utility districts had begun to lodge complaints about the proliferation of towers with their elected commissioners.  That inference is gleaned from the affidavit of the County's Land Development Director where — immediately after explaining that the new regulations permitted construction of towers in districts contiguous to residential

_____

[8] "Of those, 18 were approved with 4 requiring rezoning.   Three were denied.  One was withdrawn." *Id.*

7

property "with no input from the Planning and Zoning Commission, the County Commission or the residents of the neighborhood" (*id.*)— Mr. Humber states: "The County Commission determined that this situation had an unfair adverse impact upon residential property and more review and regulation was immediately called for to prevent the placement of additional towers inside of and immediately contiguous to residential neighborhoods."

Accordingly, on May 21, 1997, Mr. Humber notified plaintiffs that the Commission "has postponed the processing of rezoning applications involving cellular communication towers until further notice." Plaintiffs' Exhibit F. A week later, the Commission imposed a third moratorium on "the processing of rezoning applications and processing of Board of Adjustment applications intended to authorize the installation of communication towers and [also suspended] the issuance of any building or development permit for such communication towers." Plaintiffs' Exhibit G: Resolution No. May-28-1997-506. The Resolution states that

the Jefferson County Land Development Office is developing amendments to the Zoning Regulations of Jefferson County to regulate the installation of communication towers, and ... it is in the best interest of the County that no further communication towers be authorized or permitted pending the consideration and adoption of the proposed amendments.

*Id.* Mr. Humber emphasizes that the "third moratorium does not preclude co-location of antennae on existing towers." Humber Affidavit, at 3 (emphasis in original).

8

The resolution imposing the third moratorium was adopted without public comment or notice that the resolution would be heard.  It does not contain procedures for hardship waivers.

The third moratorium is due to expire on August 31, 1997, or upon the effective date of amendments to the guidelines, "unless extended further by action of the County Commission."

Sprint currently has five applications pending: two applications for rezoning, which were filed on or about March 15, 1997; two filed pursuant to the review process established by the guidelines, which do not require rezoning; and one site which needs only a building permit.  Nextel has two applications filed pursuant to the review process which do not require rezoning, and one site which needs only a building permit.

## II. CONCLUSIONS OF LAW

### A.    Jurisdiction

The Telecommunications Act of 1996 provides, in 47 U.S.C. § 332(c)(7)(B)(v), that

> [a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

Plaintiffs filed this action on June 10, 1997, only thirteen days after the Commission imposed the third moratorium.  Therefore, this Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331, which grants federal courts original jurisdiction over "all civil actions arising under the ... laws ... of the United States."

9

The Telecommunications Act "vests the court with sufficient authority to grant ... mandamus relief if such relief is warranted under the circumstances." *BellSouth Mobility, Inc. v. Gwinnett County, Georgia*, 944 F. Supp. 923, 929 (N.D. Ga. 1996); *see also, Western PCS II Corp. v. Extraterritorial Zoning Authority*, 957 F. Supp. 1230, 1233 (D. N.M. 1997). Further, this court has jurisdiction over plaintiffs' pendent state law claims, because those claims are so related to plaintiffs' federal claims that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

## B.   State Law Concerns

The threshold issue is whether the third moratorium was adopted in a manner consistent with state law. That question is pertinent because local governments do not possess inherent power to restrict the use of land, but instead derive authority to impose zoning regulations only from the state. *E.g., Swann v. Board of Zoning Adjustment of Jefferson County*, 459 So. 2d 896 (Ala. 1984). In turn, the zoning powers conferred must be exercised in strict compliance with state enabling statutes. *E.g., Lynwood Property Owners Assoc. v. Lands Described in Complaint*, 359 So.2d 357, 359 (Ala. 1978)("a zoning ordinance or amendment must be enacted pursuant to, and in substantial conformity with, the zoning statutes or enabling act authorizing it")(citations omitted).

The State of Alabama does not confer general zoning authority upon county governments. The power to control the use of land located in unincorporated areas of Jefferson County derives solely

10

from Act No. 344 of the 1947 General Session of the Alabama
Legislature.  Section one confers the following powers:

> Section 1. GRANT OF POWER.——For the purpose of
> promoting health, safety, morals, or the general welfare
> of the county, the [Jefferson County Commission] is
> hereby empowered to regulate and restrict in the
> unincorporated portions of the county ... the use and
> construction of buildings, structures and land for trade,
> industry, and residence; and to establish setback lines
> for buildings and structures along the roads and streets.

When exercising such powers, the County Commission must comply with
the procedural requirements of section four.

> Section 4. METHOD OF PROCEDURE.—— The governing
> body of the county may, by resolution or order, exercise
> the powers granted to it in Section 1 of this Act, for
> the entire unincorporated portion of the county, ... and
> as provided in Section 1 of this Act.  Before enacting
> any such resolution or order, the governing body shall
> hold a public hearing thereon, at least fifteen days'
> notice of which shall be published in a newspaper of
> general circulation within the county.  Such publication
> shall include the time and place of said hearing.  ...
> All such resolutions or orders, including ... all
> amendments, supplements, changes, modifications and
> repeals of such resolutions or orders shall be filed in
> the office of the Judge of Probate of the county, and
> shall there, as in the offices of the governing body of
> the county, be open to public inspection, free of charge.

Building moratoria (prohibiting issuance of building permits
pending adoption of a contemplated zoning plan), and interim zoning
regulations (imposing restrictions on the use of land),

> are temporary land use control techniques adopted by
> ordinance or resolution, both of which are intended to
> prevent land development that may be inconsistent with a
> proposed or pending zoning plan or zoning change.  Such
> restrictions on the use of land are interim or temporary
> in nature and seek to totally or partially halt land
> development within the community or certain areas of the
> community.  Interim zoning and building moratoria are
> sometimes referred to as "stop-gap" zoning measures which
> are intended to temporarily "freeze" land development by
> permitting only existing uses of land or by allowing

11

issuance of building permits for only those land uses
that would not be inconsistent with a contemplated zoning
plan or zoning change. These interim land use control
techniques also are utilized by municipalities in support
of pending attempts at resolving municipal problems
related to provision of public services such as schools,
water, and sewers.

1 Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* §
11.01[1] (1996)(hereafter, "Rathkopf").

Express statutory authority to adopt interim zoning ordinances
and building moratoria exists in ten states. *See Rathkopf* §
11.03[2].[9]  Alabama is not among them, nor does Act No. 47-344
expressly confer such powers on the Jefferson County Commission.
The courts of eighteen additional states have held, in the absence
of express statutory authority, that "such authority is embraced
within the more general police power authority delegated by a
zoning enabling statute or home rule municipal charter." *See
Rathkopf* § 11.03[1].[10]  This court can find no reported Alabama
decision explicitly holding to that effect. However, several cases
*implicitly* recognize (albeit by silence) the right of the Jefferson
County Commission to declare moratoria in support of attempts to
resolve problems related to the county sewage system. *See Ramer v.*

---

[9] The states are California, Colorado, Kentucky, Michigan, Minnesota,
Montana, New Jersey, Oregon, Washington, and Wisconsin. *Rathkopf* § 11.03[2], at
n.9.

[10] The states are Arkansas, Connecticut, Florida, Georgia, Hawaii,
Illinois, Louisiana, Maryland, Massachusetts, New York, Ohio, Oklahoma,
Pennsylvania, South Carolina, Tennessee, Texas, Utah, and Wyoming. *Rathkopf* §
11.03[1], at n.2. *Nota bene* that the states of California, Kentucky, Minnesota,
New Jersey, and Wisconsin are not included in this court, even though listed by
*Rathkopf* in the foregoing note, because those states subsequently adopted
explicit statutory authority for the practice: see *Rathkopf* § 11.03[2], at n.9.

12

*City of Hoover*, 437 So.2d 455 (Ala. 1983); *Peterson v. Jefferson County*, 372 So.2d 839 (Ala. 1979); *Custred v. Jefferson County*, 360 So.2d 285 (Ala. 1978); *DeBuys v. Jefferson County*, 511 So.2d 196 (Ala.Civ.App. 1987).[11]

The weight of authority sustains the right of local governments to adopt interim zoning ordinances, *provided* the procedural requirements of zoning enabling statutes are strictly followed. *See, e.g.*, 2 E.C. Yokley, *Zoning Law and Practice* 59-85 (4th ed. 1978).

> An important issue with respect to the validity of interim zoning and building moratoria is whether these temporary measures must be enacted pursuant to the notice and hearing procedures set out in zoning-enabling statutes. A number of state courts [*nine, to be exact*] have exempted interim measures from the procedural requirements applicable to ordinary zoning ordinances. However, in many states [*fifteen: the majority position*], courts have held interim zoning and stop-gap ordinances invalid as a result of procedural defects in adoption of these measures.

*Rathkopf* § 11.04 (citations omitted).

This court opines the Alabama Supreme Court would hold, in the absence of an emergency situation posing a significant threat to public health or safety, that moratoria may not be imposed unless the Jefferson County Commission strictly adhered to the procedural requirements of Act No. 47-344. Such a holding would comport with that court's numerous decisions to the following effect: "where there ha[s] been a failure to strictly follow the procedural

---

[11] None of those cases address the specific issue presented in this case: whether a resolution establishing a moratorium must comply with the notice requirements of Act No. 47-344.

requirements applicable to the action sought, especially notice provisions, this Court has invalidated the ordinance passed or the action taken, irrespective of whether any person was prejudiced by the error or omission." *Kennon & Associates, Inc. v. Gentry*, 492 So.2d 312, 318 (Ala. 1986).

The Commission admits it did not comply with the procedural requirements of its enabling statute when adopting the resolution imposing the third moratorium. And, unlike the sewer cases cited above (e.g., *Custred* and its progeny), there is no evidence that plaintiffs' proposed cell sites pose any danger to public health or safety. Accordingly, if this court is correct in its prediction of the position that would be adopted by the Supreme Court of Alabama, if faced with the issue at hand, the third moratorium is void under state law.

## C.    The Telecommunications Act of 1996

The Telecommunications Act of 1996 is designed to foster competition in the communications industry as the best means of promoting rapid deployment of advanced information technologies by the private sector, rather than the government. Although the Act does not preempt the authority of state and local governments "over decisions regarding the placement, construction, and modification of personal wireless service facilities" within their juris-dictions,[12] it nevertheless imposes substantive and procedural

---

[12] *See* 47 U.S.C. § 332(c)(7), entitled "Preservation of local zoning authority," which provides: "Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction,

14

limitations on the power of local authorities to make zoning
decisions affecting such matters. *Westel-Milwaukee Company, Inc.
v. Walworth County*, 556 N.W.2d 107, 108 (Wis.Ct.App. 1996). The
substantive limitations are expressed in 47 U.S.C. §
332(c)(7)(B)(i),[13] which reads:

> **(B) Limitations**
>
> > **(i)** The regulation of the placement,
> > construction, and modification of personal
> > wireless service facilities by any State or
> > local government or instrumentality thereof —
> >
> > > **(I)** shall not unreasonably dis-
> > > criminate among providers of
> > > functionally equivalent services;
> > > and
> > >
> > > **(II)** shall not prohibit or have the
> > > effect of prohibiting the provision
> > > of personal wireless services.

The Act's procedural limitations are set forth in subsections (ii),

and (iii), providing that:

> **(ii)** A State or local government or instru-
> mentality thereof shall act on any request for
> authorization to place, construct, or modify
> personal wireless service facilities within a
> reasonable period of time after the request is
> duly filed with such government or instru-
> mentality, taking into account the nature and
> scope of such request.

---

and modification of personal wireless service facilities." 47 U.S.C. §
332(c)(7)(A).

[13] Although not at issue in this case, the Telecommunications Act also
substantively limits the power of local authorities to restrict "the placement,
construction, and modification of personal wireless service facilities on the
basis of the environmental effects of radio frequency emissions to the extent
that such facilities comply with the Commission's regulations concerning such
emissions." 47 U.S.C. § 332(c)(7)(B)(iv)(emphasis supplied).

> (iii) Any decision by a State or local
> government or instrumentality thereof to deny
> a request to place, construct or modify
> personal wireless service facilities shall be
> in writing and supported by substantial
> evidence contained in a written record.

Plaintiffs contend that defendants' third moratorium transgresses
each of the foregoing subdivisions.

## 1.   Moratoria Under the Telecommunications Act

One United States District Court has held that the Tele-
communications Act had no effect on the power of local governments
to impose moratoria on the issuance of permits for cellular
communication towers. *Sprint Spectrum, L.P. v. City of Medina*, 924
F. Supp. 1036 (W.D. Wash. 1996). In that case, only "five days
after the TCA became law——the Medina City Council, seeking time to
deal with an expected flurry of applications, adopted a six-month
moratorium on the issuance of new special use permits for wireless
communications facilities." *Id.*, at 1037. The district court held
that:

> [t]he City's moratorium ... is not a prohibition on
> wireless facilities, nor does it have a prohibitory
> effect. It is, rather, a short-term suspension of
> permit-issuing while the City gathers information and
> processes applications. Nothing in the record suggests
> that this is other than a necessary and bona fide effort
> to act carefully in a field with rapidly evolving
> technology. Nothing in the moratorium would prevent
> Sprint's application, or anyone else's, from being
> granted.

*Id.*, at 1040.

The facts of this case have little in common with *Medina*. The
City of Medina issued its moratorium only "five days after the TCA
became law." *Id.*, at 1037. In contrast, the Jefferson County

16

Commission's **third** moratorium was issued approximately fifteen months after the Act became law, and approximately fourteen months after the Commission adopted a comprehensive regulatory scheme based on the requirements of the Act. Such a reaction can hardly be considered a "necessary and bona fide effort to act carefully." Also, the City of Medina's moratorium suspended "only the issuance of permits, not the processing of applications." *Id.* Jefferson County's third moratorium, on the other hand, suspended "the processing of rezoning applications and processing of Board of Adjustment applications intended to authorize the installation of communication towers and [also suspended] the issuance of any building or development permit for such communication towers." Resolution No. May-28-1997-506. The Jefferson County Commission has not offered a legitimate reason for not processing pending applications under existing regulations, while new amendments are being considered. Moreover, the Medina city council acted pursuant to a state statute, explicitly authorizing the imposition of moratoria or interim zoning ordinances for limited periods.[14] *Medina*, 924 F. Supp. at 1039. As previously noted, however,

---

[14] Wash. Rev. Code § 35A.63.220, provides: "A legislative body that adopts a moratorium or interim zoning ordinance, without holding a public hearing on the proposed moratorium or interim zoning ordinance, shall hold a public hearing on the adopted moratorium or interim zoning ordinance within at least sixty days of its adoption, whether or not the legislative body received a recommendation on the matter from the planning agency. If the legislative body does not adopt findings of fact justifying its action before this hearing, then the legislative body shall do so immediately after the public hearing. A moratorium or interim zoning ordinance adopted under this section may be effective for not longer than six months, but may be effective for up to one year if a work plan is developed for related studies providing for such a longer period. A moratorium or interim zoning ordinance may be renewed for one or more six-month periods if a subsequent public hearing is held and findings of fact are made prior to each renewal."

17

Alabama has no similar statute enabling the Jefferson County Commission to utilize moratoria as valid zoning tools. At best, such power arises by implication, and then only as an emergency response to substantial threats to public health and safety.

Indeed, the Jefferson County Commission's actions more closely resemble those of the West Seneca Town Board in *Sprint Spectrum, L.P. v. Town of West Senica*, 1997 WL 242535 (N.Y. Sup. Feb. 25, 1997). In that case, "[f]or reasons that [were] not clear in the record, ... the Town of West Seneca ... postponed all action on applications for communications towers for a ninety (90) day period." *Id.*, at *1. The Court held:

> It is apparent that the Town has not complied with the Telecommunications Act, specifically: the provision which requires the Town to act on Sprint's requests for permission to place its facilities within a reasonable time ...; the provision that the Town must deny such permission only in writing and that the determination must be supported by substantial evidence ... and; finally, the provision that the Town may not enact regulations which have the effect of prohibiting wireless service.

*West Seneca*, 1997 WL 242535, at *2 (citations omitted). In like manner, this court concludes the Jefferson County Commission failed to comply with the Telecommunications Act in several respects.

### 2. The Act's Substantive Provisions: Preserving Competition

Congress clearly intended that the Telecommunications Act intensify competition in the communications industry. To that end, Congress commanded that local governments "shall not" utilize zoning powers to "unreasonably discriminate among providers of functionally equivalent services," and, "shall not" enforce their

18

zoning ordinances in a manner that prohibits, or has the "effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(emphasis supplied). The Jefferson County Commission violated both substantive provisions.

First, the Commission unreasonably discriminated among providers of functionally equivalent services.[15] The series of moratoria issued by the Commission represent an anti-competitive impediment to expansion of communication services in Jefferson County. Providers entering the market several years ago were not subjected to the same barriers. Indeed, earlier entrants have benefitted most from the moratoria, in that they have been sheltered from the competitive forces of a free market, while late entrants offering superior technology have been burdened in their attempts to fill gaps in their broadcast pattern and, thereby, to compete.

It is not enough for plaintiffs to show unequal treatment, however. To constitute a violation of the Telecommunications Act, the discrimination among providers must be "unreasonable." 47 U.S.C. § 332(c)(7)((B)(i)(I).[16] An inquiry into the *reasonableness*

---

[15] Those earlier entrants to the Jefferson County market, utilizing equipment based on analog technology, rather than plaintiffs' digital technology, nevertheless provide "functionally equivalent services." *See Western PCS II Corporation v. Extraterritorial Zoning Authority of Santa Fe*, 957 F. Supp. 1230, 1237 (D. N.M. 1997).

[16] *See also* Westel-Milwaukee Co., Inc. v. Walworth County, 556 N.W.2d 107, 109 (Wis. Ct. App. 1996):

> Congress's command that local authorities "shall not" discriminate indicates that it wants local decision makers to consider how their zoning decisions affect the marketplace for communication services. Congress, however, has not placed competition above all local

19

of governmental action focuses on whether a "legitimate basis" for the contested action is presented. *See Western PCS II*, 957 F. Supp. at 1238. Here, the Jefferson County Commission said only that "it is in the best interest of the County that no further communication towers be authorized or permitted pending the consideration and adoption of the proposed amendments."[17] Such a vague assertion, without supporting evidence, does nothing to explain the Commission's actions. The Commission has not presented a legitimate basis for its acts during the pendency of these proceedings. This court therefore concludes the third moratorium amounts to "unreasonable discrimination" within the meaning of the Act.

The Commission also violated the Act's requirement that local regulation "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Plaintiffs seek to deploy digital technology in the Jefferson County market. The delay created by the Commission's moratoria "has the effect of denying the provision of this new technology and its advantages" to consumers. *Western PCS II*, 957 F. Supp. at 1238.

---

concerns as the Act nonetheless strikes a balance between local zoning power and promotion of free competition. The Act prohibits such local discrimination only if it is "unreasonable."

[17] Plaintiffs' Exhibit G: Resolution No. May-28-1997-506.

20

### 3.   Procedural Requirements of the Act

In addition to the substantive provisions, intended to prohibit local governments from using the zoning process to unreasonably discriminate among competing service providers, the Act also places procedural limitations on local regulators. It mandates that the County "shall <u>act</u> on any request for authorization to place, construct, or modify personal wireless service facilities <u>within a reasonable period of time</u> after the request is duly filed." 47 U.S.C. § 332(c)(7)(B)(ii) (emphasis supplied). By such language, "Congress has tried to stop local authorities from keeping wireless providers tied up in the hearing process." *Westel-Milwaukee*, 556 N.W.2d at 109.

Here, however, the Commission has not kept plaintiffs "tied up in the hearing process": it has excluded them from the process altogether. The Commission has not processed an application since March 21, 1997 (over 70 days ago), and the third moratorium is not scheduled to expire until "August 31, 1997, or upon the adoption ... of the zoning amendments ... whichever shall first occur, <u>unless extended by further action of the County Commission</u>." Resolution No. May-28-1997-506 (emphasis supplied). There is no guarantee the Commission will not again extend its moratorium.

Given the fact that the Commission previously adopted a comprehensive regulatory scheme based upon the requirements of the Telecommunications Act, it is unreasonable for the Commission to refuse to accept or process applications under current regulations.

21

The Commission has failed to offer a legitimate reason for its refusal to do so.

The County's refusal to act during the sway of a series of moratoria emits more than just an "aroma of obstruction"[18]: it is tantamount to denial of plaintiffs' applications. *See West Seneca*, 1997 WL 242535,, at *3. When, as here, a moratorium operates as the functional equivalent of a denial, other procedural requirements of the Act are implicated. Congress required that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

> As the legislative history of the TCA indicates, "[t]he phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." H.R.Conf. No. 104-458, 104th Congress, 2d Sess. 208 (1996), reprinted in 1996 U.S.C.A.A.N. 222. Substantial evidence, as construed by the courts, means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1952).

*BellSouth Mobility*, 944 F. Supp. at 928. The Commission's statement that "it is in the best interest of the County that no further communication towers be authorized or permitted pending the

---

[18] Remark of Judge Douglas P. Woodlock in *Sprint Spectrum L.P. v. Town of Dover*, pending in the United States District Court for the District of Massachusetts (CA-97-11264-DPW).

consideration and adoption of the proposed amendments"[19] is conclusory[20]; it certainly is not "substantial evidence" for the decision.

### III. CONCLUSION

For all of the foregoing reasons, plaintiffs are entitled to have their pending applications decided on the basis of those "review guidelines for communication towers" in effect on the date such applications were filed, rather than proposed zoning provisions not yet adopted. *See United States Cellular Corporation v. Board of Adjustment of the City of Des Moines*, No. CL-70195 (Iowa Dist. Ct. Polk County December 31, 1996)(order granting writ of certiorari)("this Application has to be decided based on the laws that existed when this matter was originally heard by the Board").

Having determined that Jefferson County's action violates both state law and the Telecommunications Act of 1996, it is not necessary, and therefore this court declines to address plaintiffs' arguments related to federal and state constitutional provisions and the Omnibus Budget Reconciliation Act of 1993. Plaintiffs' petition for mandamus and declaratory relief is due to be granted. A declaratory judgment and writ consistent with this memorandum opinion will be entered contemporaneously herewith.

---

[19] Plaintiffs' Exhibit G: Resolution No. May-28-1997-506.

[20] *I.e.*, "expressing a factual inference without expressing the fundamental facts on which the inference is based." Bryan A. Garner, *A Dictionary of Modern English Usage* 191 (2d ed. 1995).

23

DONE this __31st__ day of July, 1997.

United States District Judge

24